**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DRAFTKINGS, INC., CROWN PA GAMING LLC, AND GOLDEN NUGGET ONLINE GAMING LLC,** **Plaintiffs,** | : | **Civil Action No. 2:26-CV-04953-JHS** |
| **v.** | : | |
| **CITY OF PHILADELPHIA,** **Defendant.** | : | |

**DEFENDANT CITY OF PHILADELPHIA'S**
**REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Defendant, City of Philadelphia, through its undersigned counsel, hereby respectfully submits this reply in further support of its Motion to Dismiss (ECF No. 11). As argued initially and below, this Court lacks jurisdiction to consider, and Plaintiffs lack standing to challenge, the validly-enacted municipal ordinance. For either or any of these and the other reasons articulated, Plaintiffs' Complaint should be dismissed.

## I. The Complaint Should Be Dismissed Under Rule 12(b)(1)

### A. Plaintiffs Failed to Adequately Plead Diversity Jurisdiction

Plaintiffs argue that this Court has jurisdiction because they plead in conclusory fashion that the matter in controversy exceeds $75,000. Plaintiffs' bare recitation of the standard is not sufficient to establish this Court's jurisdiction. Nowhere in the Complaint do Plaintiffs allege any monetary harm that would result from complying with the subpoena. And Plaintiffs agree with the City that when seeking declaratory or injunctive relief, it is the value of the relief to the plaintiff that determines the amount in controversy. Pltfs' Opp'n (ECF 14) at 8. But then Plaintiffs assert three reasons that the value of the relief they seek exceeds $75,000 without

citation to factual allegations in the Complaint. Because these reasons are contained only in Plaintiffs' memorandum and are omitted from the Complaint, Plaintiffs fail to establish the amount in controversy exceeds $75,000.[1]

**First**, Plaintiffs claim there is "the cost of the investigation itself." *Id.* at 9. Plaintiffs leave the Court and the City guessing at their claimed harm, however, because nowhere do they plead the cost of compliance or an estimate or even a description of what they would need to do to comply with the subpoena. *See generally* Compl. The best Plaintiffs can do is cite the declaratory and injunctive relief they seek and gesture to the information requested in the subpoena. Pltfs' Opp'n at 9. **Second**, Plaintiffs claim that the "penalty exposure" under the Ordinance is significant enough to exceed $75,000. *Id.* at 9. But Plaintiffs do not admit to violating the Ordinance and the City has made no determination that they have done so. Because the City has not alleged that Plaintiffs have violated the law and Plaintiffs expressly deny that their conduct violates the law, no value can be attributed to avoiding hypothetical future enforcement. **Finally**, Plaintiffs argue that the "monetary recovery the City could seek . . . readily exceeds $75,000." *Id.* at 10. This argument fails for the same reasons—there is no imminent enforcement and no violation has been proven or even alleged.

---

[1] Plaintiffs' invocation of the "legal certainty" rule is unavailing. Where, as here, there are no factual allegations of the harm Plaintiffs claim they will suffer if they do not obtain relief, they fail to meet their burden to establish jurisdiction. *See Columbia Gas Trans. Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (explaining that the plaintiff bears the burden of establishing jurisdiction and that when "a defendant or the [C]ourt challenges the plaintiff's allegations regarding the amount in question, the plaintiff . . . must produce sufficient evidence to justify its claims," (citing *Burns v. Mass. Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir. 1987), relying not on the plaintiff's bare allegation that the matter met the amount in controversy but instead on factual findings by the district court of the value of the relief that plaintiff sought to determine whether the Court had diversity jurisdiction). Because Plaintiffs in this case fail to plead any harm at all, they fall short of establishing this Court's jurisdiction.

While Plaintiffs claim this information is readily available or obvious, they declined to amend the Complaint as of right to add factual allegations—e.g., an admission that they are violating the law or the cost of compliance with the subpoena. The case should be dismissed for lack of jurisdiction.

Turning to ripeness, Plaintiffs' argument proves too much. They pivot from their challenge to the subpoena, instead claiming they challenge the Ordinance itself, which gives the City the power to the issue the subpoena. Pltfs' Opp'n at 11. But the City has authority to issue investigative subpoenas under the Philadelphia Home Rule Charter and the Philadelphia Code independent of the challenged Ordinance. If Plaintiffs are challenging the Ordinance itself and not the subpoena, then they lack standing. *See* Section II(B) below and City's MOL (ECF 11-1) at 14-20. Plaintiffs cannot establish *any* harm from the challenged Ordinance from the issuance of an investigative subpoena that the City has authority to issue under independent provisions of law that Plaintiffs do not challenge.

B. Plaintiffs Lack Standing Whether the Injury They Invoke Is the Issuance of the Subpoena or Hypothetical Future Enforcement of the Ordinance

If Plaintiffs do not challenge the subpoena itself and instead seek only to invalidate the Ordinance, they lack standing. To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citation omitted). To confer standing, a "threatened injury must be certainly impending to constitute injury in fact," and "there must be at least a substantial risk that the harm will occur." *Schaller v. United States Soc. Sec. Admin.*, 844 F. App'x 566, 571 (3d Cir. 2021)

(cleaned up). *See also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that a "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of possible future injury" are insufficient). Plaintiffs' concerns about future enforcement are purely hypothetical at this stage where the City has not alleged that Plaintiffs have violated the Ordinance and Plaintiffs claim that they have not violated it.

To the extent Plaintiffs challenge the investigation itself—the issuance of the subpoena—their claims suffer from traceability and redressability problems. The "traceability element is 'akin to "but for" causation in tort.'" *LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 284-85 (3d Cir. 2021) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193-94 (3d Cir. 2016)). "Redressability" requires "a substantial likelihood that the injury in fact can be remedied by a judicial decision." *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010) (internal quotations omitted). The City has authority to issue subpoenas under its Home Rule Charter, which Plaintiffs do not challenge. Phila. Home Rule Charter § 4-400(d) ("Investigation and Law Enforcement. With the approval of the Mayor, the [Law] Department shall investigate any violation or alleged violation within the City of the statutes of the Commonwealth of Pennsylvania or the ordinances of the City which may come to its notice, and shall take such steps and adopt such means as may be reasonably necessary to enforce within the City such statutes and ordinances."); *Id.* § 8-409 ("Every officer, department, board or commission authorized to hold hearings or conduct investigations shall have power to compel the attendance of witnesses and the production of documents and other evidence and for that purpose it may issue subpoenas requiring the attendance of persons and the production of documents . . . ."). While the Ordinance is valid and enforceable, even if it were struck down, the City invoked its unchallenged Charter authority to issue the subpoena to Plaintiffs to investigate potential

violations of state and local law. *See* Subpoena, Ex. A to the Complaint (ECF 1-3) at 1. Because the harm they argue but do not allege—the cost of complying with an investigative subpoena—is not traceable to the sole ordinance Plaintiffs challenge, and would not be remedied by a favorable decision striking down the CPO, they lack standing. Nor can Plaintiffs allege any non-speculative harm from the CPO itself because they do not face imminent enforcement. And as the City argued in its Memorandum, Plaintiffs cannot challenge the subpoena itself. City's MOL at 14-20. Plaintiffs are simply trying to make an end-run around the City's valid investigative subpoena and the state court enforcement process. The case should be dismissed.

## II. Count II Fails Because the Ordinance Does Not Exceed the City's Home Rule Authority

Plaintiffs argue that the Ordinance exceeds the limits of the City's home rule power because it "enlarges" powers granted by the General Assembly in the UTPCPL. This argument fails for two reasons. First, the Pennsylvania Supreme Court has expressly interpreted Section 13133 of the First Class City Home Rule Act (the provision that contains the "enlargement" language on which Plaintiffs so heavily rely) to mean that the City cannot enact legislation that conflicts with a state law that is applicable throughout the Commonwealth. Second, the Ordinance is a local consumer protection law that provides the City authority to enforce its own local law; it does not purport to grant the City enforcement power under the UTPCPL and therefore does not "enlarge" any powers granted by the General Assembly.

Section 13133(b) of the First Class City Home Rule Act provides that "[n]otwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are . . . [a]pplicable in every part of the Commonwealth." 53 P.S. § 13133(b). The Pennsylvania Supreme Court has unequivocally and consistently held that this statutory provision does not

create additional restrictions on Philadelphia beyond the well-established principles of preemption. In *Devlin*, the Pennsylvania Supreme Court stated that "[w]ith respect to this second limitation [Section 13133(b)], this Court has explained that the General Assembly may negate ordinances enacted by home rule municipalities when the General Assembly has enacted a ***conflicting*** statute concerning 'substantive matters of statewide concern.'" *Devlin v. City of Philadelphia*, 862 A.2d 1234, 1242 (Pa. 2004) (emphasis added); *see also Pennsylvania Gaming Control Bd. v. City Council of Philadelphia*, 928 A.2d 1255, 1270 (Pa. 2007) (same). In *Spahn,* the Court reiterated that Section 13133(b) means that "local ordinances enacted pursuant to the local Charter are subordinate to the Home Rule Act when the matter at issue is one of statewide concern, ***and where the two conflict, then the subordination mandate of the Home Rule Act takes precedence and controls***." *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1144 (Pa. 2009) (emphasis added). As recently as 2024, in *Crawford*, the Court affirmed that under Section 13133(b), the "General Assembly may negate ordinances enacted by home rule municipalities when the General Assembly has enacted a ***conflicting*** statute concerning substantive matters of statewide concern." *Crawford v. Commonwealth*, 326 A.3d 850, 860–61 (Pa. 2024) (cleaned up and emphasis added).

Plaintiffs entirely ignore this body of case law.[2] Instead, they ask this Court to diverge from the Pennsylvania Supreme Court's interpretation of the First Class City Home Rule Act.

---

[2] Plaintiffs cite an opinion by the Dauphin County Court of Common Pleas, *Evans v. Rogers*, 2 Pa. D. & C.3d 706 (Pa. Com. Pl. 1977). *Evans* is a Pennsylvania trial court opinion that predates the Pennsylvania Supreme Court's more recent interpretations of the statutory limitations of home rule power, discussed above. In addition, *Evans* does not support Plaintiffs' proposed interpretation of Section 13133(b). *Evans* involved the Pennsylvania Rent Withholding Act, which empowered renters in cities of the first, second, and third class to withhold rent when their city certified their dwelling as unfit for human habitation, and a Harrisburg ordinance which required renters to obtain certification that they were current on rent payments prior to withholding rent under the Act. *Id.* at 707-08. The court in *Evans* found that the Harrisburg

This Court should decline to do so. *See Ford v. Progressive Specialty Ins. Co.*, 588 F. Supp. 3d 589, 592 (E.D. Pa. 2022) (stating the rule that in a diversity of citizenship jurisdiction case, the district court must predict how the state's highest court would decide the issue by applying existing state law). In fact, when this district court has considered claims under Section 13133(b) of the First Class City Home Rule Act, it has treated such claims as identical to a preemption claim, consistent with the Pennsylvania Supreme Court's interpretation. *See Prop. Mgmt. Grp., Ltd. v. City of Philadelphia*, No. CV 17-1260, 2017 WL 2242869, at *6 (E.D. Pa. May 23, 2017) (analyzing Section 13133(b) under the framework of preemption and noting that an argument that a municipal ordinance violates Section 13133(b) is equivalent to a "run-of-the-mill preemption argument").

In addition, even if this Court were to ignore the Pennsylvania Supreme Court's interpretation of Section 13133(b) (it should not), Plaintiffs' argument also fails based only on the plain language of Section 13133(b). The relevant language is: "[N]o city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are . . . [a]pplicable in every part of the Commonwealth." 53 P.S. § 13133(b). The UTPCPL is a statewide consumer protection law that authorizes enforcement ***of the UTPCPL*** by the Commonwealth through the Pennsylvania Attorney General and county District Attorneys. The UTPCPL is entirely silent on the question of enactment and enforcement of local consumer protection laws; it does not define or even address the powers of municipalities in the consumer protection space. Therefore, the Ordinance, a local law passed pursuant to the City's home rule power that regulates businesses acting within its jurisdiction, is not enlarging a power granted by the General Assembly in the UTPCPL.

---

ordinance, by requiring renters to pay landlords for substandard housing, defeated the legislative purpose of the Act, which was to address blight and improve living conditions. *Id.* at 710-11.

For these reasons and the reasons stated in the City's Memorandum of Law in Support of its Motion to Dismiss, Count II should be dismissed under Rule 12(b)(6).

**III. Count III Fails Because the UTPCPL Does Not Preempt the Ordinance**

First, Plaintiffs complain that the City made an incomplete statement of the law of conflict preemption by not quoting the portion of *Hoffman Mining Co.* stating that conflict preemption also applies when a local enactment "stands as an obstacle to the execution of the full purposes and objectives of a statutory enactment of the General Assembly." *Hoffman Mining Co. v. Zoning Hr'g Bd. of Adams Twp.*, 32 A.3d 587, 594 (Pa. 2011); Pltfs' Opp'n at 19. Plaintiffs are correct regarding the two conflict preemption tests articulated in *Hoffman Mining* ("irreconcilable conflict" and "stands as an obstacle"), but they incorrectly claim that the City did not address the second test in its opening brief. The Ordinance protects consumers and thus furthers the objectives of the UTPCPL. It is therefore not preempted for the reasons stated in the City's Memorandum. City's MOL at 24-26.

Second, Plaintiffs argue that exclusion of municipal enforcers is a purpose and objective of the UTPCPL and that the Ordinance stands as an obstacle to that purpose and objective. Pltfs' Opp'n at 20-21. But the UTPCPL says nothing about local consumer protection regulation or enforcement. If the General Assembly intended to prevent local enforcement in the consumer space, it would have stated so expressly. This Court should not speculate and infer that silence equals preemption. *See Hoffman Min. Co.*, 32 A.3d at 593 ("[T]he General Assembly must clearly evidence its intent to preempt."). In addition, Plaintiffs' reliance on *Commonwealth ex rel. Krasner v. Att'g Gen.* is misplaced. That case addresses whether the "Attorney General, who has concurrent authority with the DAs to bring a UTPCPL enforcement action in the name of the Commonwealth, may supersede or override the DAs' statutory enforcement authority by settling

or releasing the DAs' previously-filed enforcement actions under the UTPCPL over the DAs' objections." 309 A.3d 265, 270 (Pa. Commw. Ct. 2024). If anything, *Krasner* demonstrates that when concurrent civil enforcement actions occur, disputes regarding priority may be resolved in litigation. Any such dispute with respect to DraftKings is entirely speculative because there are no enforcement actions against DraftKings under either the UTPCPL or the Ordinance at this time.

Third, Plaintiffs' reliance on *Holt's Cigar* and *Spahn* to support their conflict preemption argument are unavailing. Pltfs' Opp'n at 21. In *Holt's Cigar*, the Pennsylvania Supreme Court held that a City ordinance that prohibited sale of certain "loosies" and cigars without any *mens rea* conflicted with Pennsylvania law, which expressly required that the offender "know or reasonably should know that the drug paraphernalia would be used in conjunction with a controlled substance." *Holt's Cigar Co. v. City of Philadelphia*, 10 A.3d 902, 914 (Pa. 2011). In *Spahn*, the Pennsylvania Supreme Court held that the City was preempted from expanding standing in zoning appeals to non-aggrieved taxpayers when the First Class City Home Rule Act expressly provided that "the term 'aggrieved person' does not include taxpayers of the city that are not detrimentally harmed." *Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1136 (Pa. 2009) (quoting 53 P.S. § 13131.1). Both of these cases represent instances in which the Court found the City ordinance directly contravened express language in the state law. As explained here and in the City's opening brief, the CPO presents no such conflict with the UTPCPL.

For all of these reasons, Count III should be dismissed under Rule 12(b)(6).

## IV. The Gaming Act Does Not Preempt the Ordinance

Plaintiffs argue that the City improperly relied on evidence outside the Complaint in its motion to dismiss regarding the scope of the Gaming Board's authority. Pltfs' Opp'n at 23-24.

Not so. The City relied instead on the statute and regulations that govern the Gaming Board. City's MOL at 28-31 (citing 4 Pa. C.S. §§ 1102, 1201, 1202, 1207, 1211, 13B41, 13 B52, 13C62, 1509, 1516 and Pa. Code §§ 501a.7, 813a.1). The scope of the Gaming Board's jurisdiction is a purely legal question that this Court may determine on a motion to dismiss regardless of Plaintiffs' legal conclusions dressed as factual allegations. Whether any of Plaintiffs' practices that may be alleged to violate the CPO in the future fall within that scope is a factual question that highlights Plaintiffs' lack of a ripe claim. The remainder of Plaintiffs' arguments regarding the Gaming Act are squarely addressed and refuted by the City's Memorandum in support of its Motion.

## V. Conclusion

For all of these reasons and those contained in the City's Memorandum of Law in support of its Motion to Dismiss (ECF 11-1), the City respectfully requests that this Court dismiss the complaint in its entirety for lack of jurisdiction or lack of standing without prejudice or for failure to state a claim with prejudice.

Dated: November 9, 2026 Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
MONIQUE MYATT GALLOWAY, ACTING CITY SOLICITOR

BY: */s/ Ryan B. Smith*
Lydia Furst
Chief Deputy City Solicitor | Pa. Bar No. 307450
Ryan B. Smith
Divisional Deputy | Pa. Bar No. 324643
Cherriel Gentles
Senior Attorney | Pa. Bar No. 87081
City of Philadelphia Law Department
1515 Arch Street, 15th Floor | Philadelphia, PA 19102
(215) 410-8264 | Ryan.Smith@phila.gov

*Attorneys for Defendant the City of Philadelphia*